UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

JUDGE SCHEINDLIN

---------------------------------------------------------X

IGI HOLDING CORPORATION,

Plaintiff,

- against -

MICHAEL W. ROUGHTON,

Defendant.

---------------------------------------------------------X

'09 CIV 8453

Civil Action No. ___________

**COMPLAINT**

RECEIVED
OCT 05 2009
U.S.D.C. S.D.N.Y.
CASHIERS

Plaintiff IGI Holding Corporation, by and through its attorneys Schulte Roth & Zabel LLP, for its Complaint against defendant Michael W. Roughton alleges as follows:

## NATURE OF THE ACTION

1. This is an action on a promissory note under which Defendant promised to pay Plaintiff the principal sum of $650,000, plus interest. Under the express terms of the note, interest was due and payable on September 30th of each year. Defendant breached the express terms of the note by failing to make the required annual interest payment on September 30, 2009. By reason of this breach, the entire principal amount is due and owing, and Defendant owes Plaintiff in excess of $682,500, which is now past due and remains unpaid.

## THE PARTIES

2. Plaintiff IGI Holding Corporation is a Delaware corporation with its principal place of business at 375 Park Avenue, Suite 3408, New York, New York 10152.

3. Upon information and belief, defendant Michael W. Roughton is a citizen of the State of New Jersey, residing at 136 East Chestnut Avenue, Metuchen, New Jersey 08840.

## JURISDICTION AND VENUE

4. This Court has subject matter jurisdiction under 28 U.S.C. § 1332(a)(2). Plaintiff is a Delaware corporation with its principal place of business in New York. Defendant is a citizen of New Jersey. The amount in controversy, without interest and costs, exceeds the sum of $75,000.

5. Venue is proper in this district under 28 U.S.C. § 1391(a)(2).

## FACTUAL ALLEGATIONS

### Background

6. In December 2007, Plaintiff agreed to acquire International Graphics, Inc. and its subsidiaries (collectively, "International Graphics") from, among others, Defendant. At the time of this multi-million dollar acquisition, Defendant was President and CEO of International Graphics. Upon Plaintiff's acquisition of International Graphics, Defendant was to become President and CEO of IGI and a member of IGI's Board of Directors, and would remain President and CEO of International Graphics. As is typical of such transactions, and integral to its success, in an effort to align Defendant's interests with those of Plaintiff, and as a condition of Plaintiff's purchase of International Graphics from Defendant and others, Defendant was required to purchase a significant number of shares of Plaintiff's common stock.

7. The negotiations of the acquisition, including Defendant's equity investment and continued employment, spanned approximately four months and took place, principally, with Plaintiff and Plaintiff's counsel, who were located in New York City. Dozens of telephone calls, faxes and emails were exchanged among counsel, including the exchange and negotiation of drafts of the operative agreements (including the promissory note that is the subject of this action). As part of the negotiations, Defendant's counsel in New Jersey sent and

received electronic communications concerning the promissory note, as well as other matters, to and from New York City.

8. To fund his purchase of IGI common stock, Defendant entered into a promissory note dated December 10, 2007 (the "Note"), pursuant to which Plaintiff lent Defendant the money necessary for him to purchase Plaintiff's common stock. As was true for all material aspects of the acquisition, the terms of the Note were negotiated with Plaintiff's New York counsel over the telephone and by email.

<u>The Note</u>

9. On December 10, 2007, Defendant executed and delivered the Note, agreeing to pay IGI on or before December 11, 2017 the principal sum of SIX HUNDRED FIFTY THOUSAND DOLLARS ($650,000) with interest payable annually on September 30th of each year at the rate of FIVE PERCENT (5%) per annum, subject to a Default Rate of SEVEN PERCENT (7%), in accordance with the terms of the Note. (A true and correct copy of the Note is attached to this Complaint as Exhibit A.)

10. The Note provides that upon a Default, IGI may "declare the outstanding principal amount of this Note and all other amounts due hereunder to be immediately due and payable." (Ex. A (Note), § V(i).)

11. Under the Note, a Default includes the failure "to pay any principal of or interest on this Note when the same shall be due (whether by scheduled maturity, required prepayment, acceleration, demand or otherwise)." (*Id.*, § V(b).)

12. The Note further provides that Defendant "agrees to pay on demand all costs and expenses (including, without limitation, all fees, expenses and other client charges of

counsel to [IGI]) incurred by [IGI] in connection with the enforcement of [IGI]'s rights, and the collection of all amounts due, under this Note or any other related documents." (*Id.*, § VII(d).)

13. The Note also provides that all payments under the Note "will be made without setoff, counterclaim or other defense." (*Id.*, § II(e).)

14. The Note is governed by New York law, providing in relevant part: **"THIS NOTE SHALL BE GOVERNED BY, AND CONSTRUED IN ACCORDANCE WITH, THE LAWS OF THE STATE OF NEW YORK WITHOUT REGARD TO THE CONFLICTS OF LAW PRINCIPLES THEREOF."** (*Id.*, § VII(f) (emphasis in original).)

15. Defendant executed the Note, which was delivered, upon information and belief, to New York by Defendant's agent(s) in connection with the closing of Plaintiff's acquisition of International Graphics, which took place at the offices of Plaintiff's counsel, located at 919 Third Avenue, New York, New York 10022.

The Default

16. Defendant failed to make the required annual interest payment due on September 30, 2009, which sum remains due and owing. Defendant's failure to make this annual interest payment constitutes a Default under Section V(b) of the Note.

17. On October 5, 2009, Plaintiff sent a letter to Defendant informing him that a Default had occurred, remained uncured, and was continuing. Plaintiff also informed Defendant that, as a result, the entire principal amount and any amounts outstanding under the Note became due and payable on September 30, 2009. Accordingly, Plaintiff demanded payment in full, together with interest at the Default Rate and any and all other amounts outstanding.

18. The following amounts are due and owing under the Note, no part of which has been paid: (a) the outstanding principal sum of $650,000; and (b) accrued but unpaid interest on the principal through October 5, 2009 of $33,154.45. These sums are exclusive of other costs and expenses that Plaintiff will incur in connection with the enforcement of Plaintiff's rights under the Note and the collection of all amounts due under the Note in connection with this action.

**AS AND FOR THE FIRST CAUSE OF ACTION**
**(BREACH OF CONTRACT — PROMISSORY NOTE)**

19. Plaintiff repeats and realleges each of the allegations contained in paragraphs 1 through 18 as if fully set forth herein.

20. The Note is a valid and enforceable contract.

21. The Note required Defendant to pay Plaintiff the principal amount of $650,000, plus interest payable annually on September 30th of each year in accordance with the terms of the Note, and required all payments to be made without setoff, counterclaim or other defense.

22. Defendant breached his obligations under the Note by failing to make the required annual interest payment on September 30, 2009, which failure constitutes a Default under the Note.

23. By virtue of Defendant's breach of the Note, Plaintiff has suffered damages in the amount of at least $682,500 plus interest thereon at the applicable Default Rate.

24. Under Section VII(d) of the Note, Plaintiff is entitled to recover from Defendant all costs and expenses, including, without limitation, reasonable attorneys' fees incurred in connection with this lawsuit.

**REQUEST FOR RELIEF**

**WHEREFORE**, Plaintiff prays for judgment against Defendant as follows:

A. An order declaring Defendant in breach of his obligations under the Note, constituting a Default thereunder, and entitling Plaintiff to the entire principal sum due under the Note plus interest at the Default Rate, Plaintiff's costs and expenses, including, without limitation, reasonable attorney's fees, and post-judgment interest as provided by applicable law;

B. Judgment in favor of Plaintiff in an amount not less than $683,154.45; and

C. Such other and further relief as the Court deems just and proper.

Dated: New York, New York
October 5, 2009

SCHULTE ROTH & ZABEL LLP

By:____________________________
Howard O. Godnick
Christopher H. Giampapa

919 Third Avenue
New York, New York 10022
(212) 756-2000
howard.godnick@srz.com
christopher.giampapa@srz.com

*Attorneys for Plaintiff IGI Holding Corporation*

Exhibit A

# SECURED PROMISSORY NOTE

US$650,000

New York, NY
December 10, 2007

FOR VALUE RECEIVED, Michael Roughton (the "Maker") HEREBY PROMISES TO PAY to the order of IGI Holding Corp., a Delaware corporation (the "Company"), (i) the principal sum of US Six Hundred Fifty Thousand Dollars (US$650,000) or, if less, the aggregate unpaid principal amount under this Note, and (ii) interest on any and all principal amounts remaining unpaid hereunder from time to time outstanding, from the date hereof until such principal amount becomes due, at the rate and at the times indicated below.

I. **Principal.** The principal of this Note shall be due and payable ten (10) years from the date set forth above unless there is a Change of Control of the Company, in which case the principal will be due and payable within ten (10) days of written notice of such Change in Control. "Change of Control" means (i) the sale or other disposition by Pouschine Cook Capital Partners II, LP ("PCCP II") of shares of Common Stock (defined below), which sale or disposition would result in PCCP II owning less than a majority of the outstanding shares, whether by sale, merger or otherwise or (ii) the consummation or other disposition of all or substantially all of the Company's assets.

COPY

II. **Interest.** (a) Interest on this Note shall be paid at a rate of 5% per annum (the "Stated Rate").

(b) Interest on this Note is payable annually on September 30 of the applicable year, based on the average outstanding balance on the note as of September 30 of the previous year of the Company, until the date on which the principal of this Note shall be paid or prepaid in full.

(c) In the event that any installment of interest and principal shall not be paid in full when due, this Note shall bear interest on the outstanding principal, together with any interest due and owing (to the extent permitted by law), from the day when due until such amount is paid in full, payable on demand, at a fixed interest rate per annum equal at all times to the sum of the Stated Rate plus 2% (the "Default Rate"). All interest on this Note shall be computed on the basis of a year of 365 or 366 days, as applicable, for the actual number of days (including the first day but excluding the last day) elapsed. Notwithstanding any other provision of this Note, interest paid or becoming due hereunder shall in no event exceed the maximum rate permitted by applicable law.

(d) If any amount payable hereunder shall be due on a day that is not a Business Day, such payment shall be made on the next succeeding Business Day, and such extension of time shall be included in the computation of interest. For purposes of the foregoing, "Business Day" means a day on which banks are not required or authorized to close in the State of New York.

(e) Principal, interest and all other amounts due hereunder are payable in lawful money of the United States of America and in immediately available funds, at the offices of the Company at IGI Holding Corp., 6 Ingersoll Road, South Plainfield, NJ 07080 or at such other place as the Company shall designate in writing to the Maker. All payments under this Note will be made without setoff, counterclaim or other defense. All such payments shall be made free and clear of and without deduction for any present or future income, stamp or other taxes, levies, imposts, deductions, charges, fees, withholding, restrictions or conditions of any nature now or hereafter imposed, levied, collected, withheld or assessed by any jurisdiction or by any political subdivision or taxing authority thereof or therein, and all interest, penalties or similar liabilities, excluding taxes on the overall net income of the Company.

(f) The Maker may, at his/her option and upon not less than two Business Day's prior written notice, prepay the outstanding principal of this Note, in whole at any time or in part from time to time, without penalty or premium, each such prepayment to be accompanied by the payment of accrued interest to the date of each prepayment on the amount prepaid. Each notice of prepayment shall be irrevocable and shall specify the date and the amount of the prepayment.

III. **Collateral.** As collateral security for all indebtedness, obligations and other liabilities of the Maker to the Company now or hereafter arising, including, without limitation, the indebtedness evidenced by this Note (collectively, the "Obligations"), the Maker hereby transfers, grants and pledges a continuing security interest in all of the Maker's right, title and interest in and to the 6,500 shares of Common Stock, par value $0.01 per share (the "Common Stock"), of the Company, together with stock powers duly executed in blank, and also in each case, any and all additional shares of capital stock and/or securities and all distributions and other property which may at any time or from time to time be issued in respect of, in exchange for, or in substitution of such Common Stock or for other securities of the Company or other property which may be delivered to and held in pledge by the Company pursuant to the terms hereof and all proceeds of any and all of the foregoing.

IV. **Representations.** The Maker represents and warrants that:

(a) the execution, delivery and performance by the Maker of this Note, the Subscription Agreement, dated as of the date hereof (the "Subscription Agreement") or the Stock Purchase Agreement, dated as of the date hereof (the "Stock Purchase Agreement"), between the Maker and the Company, and any other agreement, instrument and/or other document delivered by the Maker to the Company in connection herewith or therewith (this Note, the Subscription Agreement or the Stock Purchase Agreement, together with all such other agreements, instruments and other documents, are hereinafter referred to individually as a "Document" and collectively as the "Documents"), do not contravene any law or any contractual restriction binding on or affecting the Maker;

(b) no authorization or approval or other action by, and no notice to or filing with, any governmental authority or regulatory body is required for the due execution, delivery and performance by the Maker of any Document;

(c) each Document constitutes the legal, valid and binding obligation of the Maker, enforceable against the Maker in accordance with its terms; and

(d) there is no pending or threatened action or proceeding affecting the Maker before any governmental agency or arbitrator which may materially adversely affect the financial ability of the Maker to fulfill the obligations arising pursuant to this Note.

V. **Defaults.** If any of the following shall occur (each a "Default"):

(a) the Maker's employment with the Company shall be terminated by the Maker or the Company for any reason whatsoever; or

(b) the Maker shall fail to pay any principal of or interest on this Note when the same shall be due (whether by scheduled maturity, required prepayment, acceleration, demand or otherwise); or

(c) the Maker shall sell any or all of the Common Stock or any interest therein, without regard to whether such sale is a valid sale hereunder or under any other agreement that limits or purports to limit the transferability of the Common Stock or any interest therein; or

(d) any representation or warranty made by the Maker in this Note, in any other Document or in any document or certificate executed in connection with this Note or any other Document shall have been incorrect in any material respect when made; or

COPY

(e) the Maker shall fail to perform or observe any term, covenant or agreement contained herein or in the Subscription Agreement, Stockholders Agreement or in any other Document to be performed or observed by the Maker and such failure, if capable of being remedied, shall remain unremedied for five days after notice thereof shall have been given to the Maker by the Company; or

(f) the Maker shall be generally not paying her debts as such debts become due, or shall admit in writing her inability to pay her debts generally, or shall make a general assignment for the benefit of creditors; or any proceeding shall be instituted by or against Maker seeking to adjudicate her a bankrupt or insolvent, or seeking reorganization, arrangement, adjustment, protection, relief or composition of her debts under any law relating to bankruptcy, insolvency or reorganization or relief of debtors, or seeking the entry of an order for relief or the appointment of a receiver, trustee, custodian or other similar official for the Maker or for any substantial part of her property; or the Maker shall take any action to authorize or effect any of the actions set forth above in this clause (f); or

(g) any provision of this Note or any other Document shall at any time for any reason be declared to be null and void by a court of competent jurisdiction, or the validity or enforceability thereof shall be contested by the Maker or any other person, or a proceeding shall be commenced by the Maker or any other person seeking to establish the invalidity or unenforceability thereof, or the Maker shall deny that she has any liability or obligation hereunder or thereunder;

then the Company may (i) declare the outstanding principal amount of this Note and all other amounts due hereunder to be immediately due and payable, provided that with respect to clause (a) of this Section V, the Company and the Maker agree that the Company shall exercise its call right under the Stockholders Agreement with respect to the portion of Common Stock held by the Maker to secure the Obligations and the repurchase price as determined thereunder shall be used to offset

an equivalent amount of the amounts due hereunder (which Maker acknowledges may be more than the balance of the Obligations due hereunder) and the balance of any amounts due hereunder shall be due and payable ten (10) days after the Company determines the purchase price of such Common Stock in accordance with the Stockholders Agreement, whereupon the outstanding principal amount of this Note and all such other amounts shall become and shall be forthwith due and payable, without diligence, presentment, demand, protest or other notice of any kind, including, without limitation, notice of intent to accelerate or notice of acceleration, all of which are hereby expressly waived, and (ii) exercise any and all of its other rights under applicable law, hereunder and under the other Documents. In addition to the other rights and remedies provided for herein or otherwise available to it, upon any Default, the Company may exercise all of the rights and remedies of a secured party on default under the Uniform Commercial Code then in effect in the State of New York, including without limiting the generality of the foregoing and without notice except as specified below, selling the Common Stock or any part thereof in one or more transactions at public or private sale, at any exchange or broker's board or elsewhere, at such price or prices and on such other terms as the Company may deem commercially reasonable. The Maker agrees that, to the extent notice of sale shall be required by law, at least 3 days' notice to the Maker of the time and place of any public sale or the time after which any private sale is to be made shall constitute reasonable notification. All proceeds received following any Default hereunder shall be applied to the Note or any indebtedness arising hereunder or in conjunction with this Note as the Company shall determine in its sole and absolute discretion.

COPY

VI. **Successors.** This Note shall be binding upon and inure to the benefit of the Maker and the Company and their respective successors and assigns, except that the Maker may not assign any rights or obligations hereunder or any interest herein without the prior written consent of the Company. The Company may assign to one or more other entities or persons all or a portion of its rights under this Note and may transfer this Note to any assignee.

VII. **Miscellaneous.** (a) All notices or other communications provided for hereunder shall be in writing (including telecommunications) and shall be mailed, telecopied, telexed or delivered to the Maker at the address of the Maker set forth next to the Maker's signature, or at such other address as may hereafter be specified by the Maker to the Company (at its address set forth herein) in writing. All notices and communications shall be effective (i) if mailed, when received at the address specified above, (ii) if telecopied, when transmitted, (iii) if telexed, when confirmed by telex answer-back, and (iv) if delivered, upon delivery.

(b) No failure on the part of the Company to exercise, and no delay in exercising, any right, power, privilege or remedy hereunder shall operate as a waiver thereof, nor shall any single or partial exercise thereof by the Company preclude any other or further exercise thereof or the exercise of any other right, power, privilege or remedy of the Company. No amendment or waiver of any provision of this Note, nor consent to any departure by the Maker therefrom, shall in any event be effective unless the same shall be in writing and signed by the Company, and then such waiver or consent shall be effective only in the specific instance and for the specific purpose for which given.

(c) Any provision hereof which is prohibited or unenforceable in any jurisdiction shall, as to such jurisdiction, be ineffective only to the extent of such prohibition or unenforceability without invalidating the remaining provisions hereof or affecting the validity or enforceability of such provision in any other jurisdiction.

(d) The Maker hereby agrees to pay on demand all costs and expenses (including, without limitation, all fees, expenses and other client charges of counsel to the Company) incurred by the Company in connection with the enforcement of the Company's rights, and the collection of all amounts due, under this Note or any other related documents. The Maker agrees to indemnify and hold harmless the Company and each of its directors, officers, employees, agents, affiliates and advisors from and against any and all claims, damages, losses, liabilities and expenses (including, without limitation, fees and other client charges of counsel) which may be incurred by or asserted against the Company or any such director, officer, employee, agent, affiliate or advisor in connection with or arising out of any investigation, litigation or proceeding related to or arising out of this Note, the Subscription Agreement, Stockholders Agreement or any other related document or any transaction contemplated hereby or thereby (but in any case excluding any such claims, damages, losses, liabilities or expenses incurred by reason of the gross negligence or willful misconduct of the indemnitee). The obligations of the Maker under this clause (d) shall survive the payment in full of this Note.

(e) If at any time the Stated Rate would exceed the maximum non-usurious contract rate of interest allowed from time to time by applicable law (the "Highest Lawful Rate"), the rate of interest to accrue on the unpaid balance of principal under this Note shall be limited to the Highest Lawful Rate, but any subsequent reductions in such rate of interest shall not reduce the Stated Rate below the Highest Lawful Rate until the total amount of interest accrued hereunder equals the amount of interest which would have accrued if the Stated Rate had at all times been in effect without respect to any limitation.

Regardless of any provision contained herein, or in any other document executed in connection herewith, the holder hereof shall never be entitled to receive, collect, or apply, as interest hereon, any amount in excess of the Highest Lawful Rate, and in the event the holder hereof ever receives, collects or applies, as interest, any such excess, such amount shall be deemed a partial prepayment of principal, and, if the principal hereof is paid in full, any remaining excess shall forthwith be refunded to Maker. In determining whether or not the interest paid or payable, under any specific contingency, exceeds the Highest Lawful Rate, Maker and the holder hereof shall, to the maximum extent permitted by law, (a) characterize any nonprincipal payment as an expense, fee or premium rather than as interest, (b) exclude voluntary prepayment and the effects thereof and (c) amortize, prorate, allocate and spread, in equal parts, the total amount of interest throughout the entire contemplated term of this Note so that the interest rate is uniform throughout the entire term hereof.

Notwithstanding the foregoing, it is the intention of the Maker and the Company to conform strictly to any applicable usury laws. Accordingly, if the Company contracts for, charges, or receives any consideration from the Maker which constitutes interest in excess of the Highest Lawful Rate, then any such excess shall be canceled automatically and, if previously paid, shall at the Company's option be applied to the outstanding principal balance of this Note or be refunded to the Maker.

(f) **THIS NOTE SHALL BE GOVERNED BY, AND CONSTRUED IN ACCORDANCE WITH, THE LAWS OF THE STATE OF NEW YORK WITHOUT REGARD TO THE CONFLICTS OF LAW PRINCIPLES THEREOF.**

COPY

(g) The Maker and the Company (by its acceptance hereof) mutually waive any right to trial by jury in any action, proceeding or counterclaim arising out of or relating to this Note.

IN WITNESS WHEREOF, the undersigned has executed this Note as of the day and year first above written.

COPY

_________________________________

Name: MICH[illegible]UGHTON

Address: 3102 [illegible] DR.
BELLE MEAD, NJ 08502

Telephone: 908.904.1264

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

**Index No.** **Year** 2009

IGI HOLDING CORPORATION

Plaintiff

- against -

MICHAEL W. ROUGHTON

Defendant

**COMPLAINT**

Schulte Roth & Zabel LLP
*Attorneys for* PLAINTIFF
*Office and Post Office Address, Telephone*
919 Third Avenue
NEW YORK, NY 10022
—
(212) 756-2000

**To**

**Attorney(s) for**