**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| IGI HOLDING CORPORATION,<br><br>Plaintiff,<br>-against-<br><br>MICHAEL W. ROUGHTON,<br><br>Defendant. | Civil Action No. 09-CIV-8453 (SAS/FM) |
| MICHAEL W. ROUGHTON,<br><br>Counterclaimant,<br><br>-against-<br><br>POUSCHINE COOK CAPITAL MANAGEMENT, LLC, POUSCHINE COOK CAPITAL PARTNERS II, LP, IGI HOLDING CORP., INTERNATIONAL GRAPHICS, INC., JOHN L. POUSCHINE, DANIEL B. BALZORA, ALLEN COHEN, KEVIN MORAN AND STEPHEN LOVASS,<br><br>Counterclaim Defendants. | **ANSWER, COUNTERCLAIM AND JURY DEMAND** |

The Defendant, Michael W. Roughton, by and through his attorneys, Lindabury, McCormick, Estabrook & Cooper, P.C., for his Answer to the Complaint herein, says:

1. The Defendant admits that the Complaint alleges a breach of contract involving a promissory note ("Note"). The Defendant refers the Plaintiff to the Note itself for its precise terms and conditions, including its reference to a Stockholders Agreement and Stock Purchase Agreement. Except as specifically admitted herein, the Defendant denies the allegations set forth in Paragraph 1 of the Complaint.

2. The Defendant admits the allegations set forth in Paragraph 2 of the Complaint.

3. The Defendant admits the allegations set forth in Paragraph 3 of the Complaint.

4. The Defendant admits the allegations set forth in Paragraph 4 of the Complaint.

5. The Defendant denies the allegations set forth in Paragraph 5 of the Complaint.

6. The Defendant admits that the Plaintiff agreed to acquire International Graphics, Inc. in 2007 pursuant to the terms of a Stock Purchase Agreement, and refers the Plaintiff to that document for its precise terms and conditions. The Defendant further admits that he was the President and CEO of International Graphics at the time of acquisition, and became President and CEO of IGI and a member of IGI's Board of Directors after the acquisition. The Defendant also admits that he was required to purchase a significant number of shares of the Plaintiff's common stock to purportedly align the interest of both parties, an alignment that was obliterated with his termination by the Plaintiff. The Defendant has insufficient knowledge or information upon which to form a belief as to the trust of the remaining allegations set forth in Paragraph 6 of the Complaint.

7. The Defendant admits that negotiations took place and that telephone calls, faxes, emails and draft documents were exchanged amongst counsel. The Defendant further admits that the Plaintiff's counsel is located in New York City and his then counsel is located in New Jersey. Except as specifically admitted herein, the Defendant denies the allegations set forth in Paragraph 7 of the Complaint.

8. The Defendant admits that to fund a portion of his purchase of IGI common stock he signed the Note dated December 10, 2007, as well as an Employment Agreement, Stockholders Agreement and Stock Purchase Agreement. The Defendant further admits that there were negotiations over the telephone and by email between counsel regarding some of the terms of the Note. Except as specifically admitted herein, the Defendant denies the allegations

set forth in Paragraph 8 of the Complaint.

9. The Defendant admits that on December 10, 2009 he executed and delivered the Note, a copy of which is annexed to the Complaint as Exhibit A, and refers the Plaintiff to the Note for its precise terms and conditions, including its reference to the Stockholders Agreement and Stock Purchase Agreement.

10. The Defendant admits that the Note contains language regarding “Defaults” and refers the Plaintiff to the Note for its precise terms and conditions, including those that would put the quoted language in its proper context.

11. The Defendant admits that the Note contains language regarding “Defaults” and refers the Plaintiff to the Note for its precise terms and conditions, including the balance of the partial sentence quoted by the Plaintiff that would complete the quoted language and put it in its proper context.

12. The Defendant admits that the Note contains language regarding “Miscellaneous” and refers the Plaintiff to the Note for its precise terms and conditions, including those that would put the quoted language in its proper context.

13. The Defendant admits that the Note contains language regarding “Interest” and refers the Plaintiff to the Note for its precise terms and conditions, including those that make express provision for offset and counterclaim and otherwise put the quoted language in its proper context.

14. The Defendant admits that the Note contains language regarding “Miscellaneous” and refers the Plaintiff to the Note for its precise terms and conditions, as well as to the referenced Stockholders Agreement and Stock Purchase Agreement that are to be governed by Delaware law, and the Employment Agreement that is to be governed by New Jersey law.

15. The Defendant admits that he executed the Note in New Jersey. The Defendant has insufficient knowledge or information upon which to form a belief as to the truth of the remaining allegations set forth in Paragraph 15 of the Complaint.

16. The Defendant admits that he did not make an annual interest payment on or before September 30, 2009. The Defendant denies the remaining allegations set forth in Paragraph 16 of the Complaint.

17. The Defendant admits that on or about October 5, 2009 the Plaintiff sent a letter to him and refers the Plaintiff to that letter for its precise terms. The Defendant denies the remaining allegations set forth in Paragraph 17 of the Complaint.

18. The Defendant admits that no part of the note has been paid. The Defendant denies the remaining allegations set forth in Paragraph 18 of the Complaint.

19. The Defendant repeats and reasserts each and every answer given to Paragraphs 1 through 18 of the Complaint as if fully set forth at length herein.

20. The Defendant denies the allegations set forth in Paragraph 20 of the Complaint.

21. The Defendant admits that the principal amount of the Note is $650,000.00 and refers the Plaintiff to the Note for its precise terms and conditions. The Defendant denies the remaining allegations set forth in Paragraph 21 of the Complaint.

22. The Defendant denies the allegations set forth in Paragraph 22 of the Complaint.

23. The Defendant denies the allegations set forth in Paragraph 23 of the Complaint.

24. The Defendant denies the allegations set forth in Paragraph 24 of the Complaint.

**AS AND FOR THE FIRST SEPARATE DEFENSE**

25. The Complaint fails to state a claim upon which relief can be granted.

**AS AND FOR THE SECOND SEPARATE DEFENSE**

26. The terms of the Note are unconscionable.

**AS AND FOR THE THIRD SEPARATE DEFENSE**

27. The Note mandates the Plaintiff to offset the repurchase price of the Defendant's stock against any amounts due under the Note. The repurchase price is to be determined pursuant to the provisions of the Stockholders Agreement. The Plaintiff failed or otherwise refused to determine the repurchase price pursuant to the terms of the Stockholders Agreement.

**AS AND FOR THE FOURTH SEPARATE DEFENSE**

28. The breach of the Stockholders Agreement excused performance by the Defendant with the terms of the Note.

**AS AND FOR THE FIFTH SEPARATE DEFENSE**

29. The fraud of the Plaintiff and others acting in concert with it excuses performance by the Defendant with the terms of the Note.

**AS AND FOR THE SIXTH SEPARATE DEFENSE**

30. The relief sought by the Plaintiff is barred by the doctrine of unclean hands.

**AS AND FOR THE SEVENTH SEPARATE DEFENSE**

31. The relief sought by the Plaintiff is barred by virtue of the Plaintiff's failure, and that of others acting in concert with it, to honor the covenant of good faith and fair dealing implicit in their dealings with the Defendant in connection with the December 10, 2007 closing.

**AS AND FOR THE EIGHTH SEPARATE DEFENSE**

32. The Plaintiff has failed to mitigate its damages, if any.

## AS AND FOR THE NINTH SEPARATE DEFENSE

33. Venue is either improper in New York or more proper in New Jersey, and the matter should be transferred to the District of New Jersey or dismissed.

Dated: Westfield, New Jersey
October 26, 2009

LINDABURY, McCORMICK, ESTABROOK
& COOPER, P.C.
Attorneys for Defendant/Counterclaimant

By:/s/ Peter M. Burke
Peter M. Burke

**LINDABURY, McCORMICK, ESTABROOK & COOPER, P.C.**
ATTORNEYS AT LAW
26 Broadway – Suite 2300
New York, NY 10004-1805
(212) 742-3390 (phone)
(212) 269-5016 (fax)
pburke@lindabury.com

## COUNTERCLAIM

The Defendant/Counterclaimant, Michael W. Roughton ("Counterclaimant" or "Roughton"), by way of counterclaim against the Plaintiff/Counterclaim Defendants herein, says:

## FIRST COUNT

1. This Counterclaim arises, in part, under Section 10(b) of the Securities and Exchange Act of 1934, 15 U.S.C. § 78j(b) and S.E.C. Rule 10b-5, 17 C.F.R. § 240.10b-5 thereunder. One or more of the Counterclaim Defendants, directly and indirectly, have made use of the means and instrumentalities of interstate commerce, the means and instruments of transportation and communication in interstate commerce, and the mails, in connection with the acts, practices, and courses of business complained of herein.

2. On or about July 1, 2006, Roughton became the president of International Graphics, Inc. ("International"), and subsequently received the title of chief executive officer as well.

3. In the latter part of 2007, Pouschine Cook Capital Management, LLC ("Pouschine Cook") entered into negotiations to purchase International through IGI Holding Corp. ("IGI Holding" or the "Plaintiff"), a company to be formed in which Pouschine Cook Capital Partners II, LP ("Pouschine Partners"), an affiliate of Pouschine Cook, would be the principal shareholder.

4. In the two months that transpired between Pouschine Cook's October 3, 2007 letter to International regarding acquisition of 100% of the shares of that company and the closing that took place on December 10, 2007, Pouschine Cook and John L. Pouschine ("Pouschine") repeatedly positioned Pouschine Cook and the relationship that Pouschine claimed to have sought with International's management team, including the Counterclaimant, as one of collaboration between peers focused on the long term health and growth of the business.

5. In support of that relationship, Pouschine Cook and Pouschine stated that investment by the management team in IGI Holding was necessary to align management's interest with the other investors by providing a significant financial incentive toward growing the business of International. Pouschine Cook and Pouschine required not only Roughton but also the other members of International's management team to purchase IGI Holding securities to purportedly ensure that alignment of interest.

6. Pouschine Cook and Pouschine repeatedly promoted their experience, desire and good will to partner with Roughton and the other members of the management team so as to allay any cause for concern over the investment in IGI Holding. IGI Holding, Pouschine Cook and Pouschine advised that Roughton and other members of the management team would each be provided with a promissory note to facilitate their investments.

7. On or about November 14, 2007, a meeting was held amongst Pouschine, Roughton and others to discuss management's investment in IGI Holding. At the meeting Pouschine repeatedly stated that all of the investors would be treated as equals, but gave absolutely no detail regarding how share value would be established.

8. Pouschine Cook and Pouschine subsequently determined that the purchase price would be $100.00 per share, but never gave any reason or rationale for that price or value. No financial documents were ever made available to Roughton or his designee to enable him to appropriately value the IGI Holding shares. Indeed, Pouschine Cook and Pouschine would not provide Roughton with any financial information regarding IGI Holding, stating only that its value was based on the value of International.

9. Pouschine Cook and Pouschine utterly failed to disclose to Roughton the debt that IGI Holding was taking on in connection with the acquisition of International.

10. Pouschine Cook and Pouschine, through their silence, omitted to state material

facts that falsely led Roughton to believe that $100.00 per share represented fair value. Roughton was repeatedly assured that he had to trust Pouschine Cook and Pouschine in valuation and other matters if he was going to be part of the team going forward.

11. Moreover, throughout repeated discussions in October, November and December 2007, both by telephone and in person, Pouschine Cook and Pouschine represented that the notes were singularly supported by the underlying IGI Holding stock as collateral.

12. The untrue statements of material facts and omission of material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading, were knowing, willful or highly reckless. They were made or omitted to be made both in meetings in New Jersey and by telephone.

13. The deception had as one of its goals a larger investment by Roughton and other members of management in order that Pouschine Cook and Pouschine could more aggressively fund the transaction and invest one and one half million ($1,500,000.00) dollars less of their own funds than had been committed in their letter of intent.

14. Roughton reasonably relied upon the material misrepresentations and omissions of Pouschine and Pouschine Cook. On or about December 10, 2007 he was required to sign a Stockholders Agreement with Pouschine Partners and other individuals and entities, and pursuant thereto he purchased 10,100 shares of IGI Holding for one million ten thousand ($1,010,000.00) dollars. Roughton paid three hundred sixty thousand ($360,000.00) dollars in cash, and the balance in the form of a promissory note payable to IGI Holding in the amount of six hundred fifty thousand ($650,000.00) dollars.

15. On or about June 29, 2009 Roughton was terminated without cause by International and IGI Holding as the president and chief executive officer of International. In connection with that termination, International and IGI Holding contend that IGI Holding is

entitled to re-purchase Roughton's stock at five ($5.00) dollars per share pursuant to the Stockholders Agreement.

16. As a consequence, the Counterclaim Defendants seek to compel Roughton to sell his shares in IGI Holding for fifty thousand five hundred ($50,500.00) dollars, the same shares for which eighteen months earlier he had paid one million ten thousand ($1,010,000.00) dollars.

17. In addition, the Counterclaim Defendants seek repayment of the six hundred fifty thousand ($650,000.00) dollar promissory note and the forfeiture of the three hundred sixty thousand ($360,000.00) dollars cash Roughton paid for the IGI Holding securities.

18. The fraudulent actions and omissions of Pouschine and Pouschine Cook and his termination without cause are the proximate cause of Roughton having lost not only virtually all of his three hundred sixty thousand ($360,000.00) dollar initial investment in IGI Holding, but also of his subjection to the demand for payment of the promissory note for which the underlying collateral has a putative value of fifty thousand five hundred ($50,500.00) dollars.

19. This fraudulent scheme was conceptualized and designed to bilk Roughton out of almost one million ($1,000,000.00) dollars. It is a scheme that Roughton has since learned has been perpetrated by Pouschine, and one or more entities that he controls, in prior corporate transaction(s).

WHEREFORE, Roughton demands judgment against Pouschine Cook, Pouschine and IGI Holding for an order:

a. Mandating the return of Roughton's $360,000.00 investment in IGI Holding;

b. Voiding Roughton's promissory note in the amount of $650,000.00 to IGI Holding;

c. Awarding compensatory and treble damages;

d. Awarding interest, attorney's fees and costs of suit; and

e. Granting such other and further relief as the Court may deem appropriate or just.

## SECOND COUNT

20. The Counterclaimant repeats and realleges paragraphs 2 through 19 above as if fully set forth herein.

21. The conduct of Pouschine Cook and Pouschine constitutes common law fraud.

WHEREFORE, Roughton demands judgment against Pouschine Cook, Pouschine and IGI Holding for an order:

a. Mandating the return of Roughton's $360,000.00 investment in IGI Holding;

b. Voiding Roughton's promissory note in the amount of $650,000.00 to IGI Holding;

c. Awarding compensatory and punitive damages;

d. Awarding interest, attorney's fees and costs of suit; and

e. Granting such other and further relief as the Court may deem appropriate or just.

## THIRD COUNT

22. The Counterclaimant repeats and realleges paragraphs 2 through 21 above as if fully set forth herein.

23. Pursuant to the terms of the aforementioned Stockholders Agreement, IGI Holding has the right to repurchase Roughton's shares in that company upon his termination of employment.

24. The Stockholders Agreement provides that the purchase price for Roughton's shares is to be at fair market value of the stock.

25. The Stockholders Agreement defines fair market value as "the fair market value

per share of the applicable class of [IGI Holding stock] as determined by the Board of Directors in good faith, which shall not take into account any minority discount."

26. Pouschine, Daniel V. Balzora, Allen Cohen, Kevin Moran and Stephen Lovass, along with the Counterclaimant, comprised the board of directors of IGI Holding in June 2009.

27. The shares of stock in IGI Holding that Roughton had purchased in December 2007 were purportedly valued by the board of directors in June 2009 at $5.00 per share.

28. The board of directors of IGI Holding never held a meeting or acted by unanimous written consent to fix the value of IGI Holding shares at $5.00 per share at any time prior to Roughton having been apprised of that purported value in June 2009.

29. At no time has the fair market value of the subject stock been determined by IGI Holding's board of directors.

30. Alternatively, assuming that the fair market value of the subject shares has been determined by the board of directors, the determination was not, contrary to the express provisions of the Stockholders Agreement, made in good faith.

31. If the board of directors actually fixed a value of $5.00 per share, the board has acted in bad faith.

32. The purported valuation of $5.00 per share is the product of financial chicanery and machinations by the Counterclaim Defendants to deprive Roughton of the fair market value of his investment in IGI Holding.

33. The Counterclaim Defendants have breached the terms of the Stockholders Agreement. By virtue of that breach, Roughton has sustained damages.

WHEREFORE, Roughton demands judgment against Pouschine, Daniel V. Balzora, Allen Cohen, Kevin Moran and Stephen Lovass for an order:

a. Awarding compensatory and punitive damages;

b. Awarding interest, attorney's fees and costs of suit; and

c. Granting such other and further relief as the Court may deem appropriate or just.

**FOURTH COUNT**

34. The Counterclaimant repeats and realleges paragraphs 2 through 33 above as if fully set forth herein.

35. The Counterclaim Defendants have acted in concert, combined, conspired or ratified the conduct of the others to inflict financial harm upon Roughton by improperly fixing, or claiming to have fixed, a value of $5.00 per share on the stock owned by him.

36. As a result of that wrongful conduct, Roughton has sustained damages.

WHEREFORE, Roughton demands judgment against Pouschine Cook, Pouschine Partners, IGI Holding, International, Pouschine, Daniel V. Balzora, Allen Cohen, Kevin Moran and Stephen Lovass for an order:

a. Awarding compensatory and punitive damages;

b. Awarding interest, attorney's fees and costs of suit; and

c. Granting such other and further relief as the Court may deem appropriate or just.

**FIFTH COUNT**

37. The Counterclaimant repeats and realleges paragraphs 2 through 36 above as if fully set forth herein.

38. There is implied in every contract, including the Stockholders Agreement, an implied covenant of good faith and fair dealing. The Counterclaim Defendants have breached that covenant.

39. As a consequence of that breach, Roughton has sustained damages.

WHEREFORE, Roughton demands judgment against IGI Holding, Pouschine Capital, Pouschine, Daniel V. Balzora, Allen Cohen, Kevin Moran and Stephen Lovass for an order:

a. Awarding compensatory and punitive damages;

b. Awarding interest, attorney's fees and costs of suit; and

c. Granting such other and further relief as the Court may deem appropriate or just.

**SIXTH COUNT**

40. The Counterclaimant repeats and realleges paragraphs 2 through 39 above as if fully set forth herein.

41. The shareholders and board members of IGI Holding owe a fiduciary duty to the Counterclaimant.

42. By their wrongful conduct, the Counterclaim Defendants have breached their fiduciary duty owed to Roughton.

43. As a consequence of its breach of fiduciary duty, Roughton has sustained damages.

WHEREFORE, Roughton demands judgment against Pouschine Capital, Pouschine, Daniel V. Balzora, Allen Cohen, Kevin Moran and Stephen Lovass for an order:

a. Awarding compensatory and punitive damages;

b. Awarding interest, attorney's fees and costs of suit; and

c. Granting such other and further relief as the Court may deem appropriate or just.

**SEVENTH COUNT**

44. The Counterclaimant repeats and realleges paragraphs 2 through 43 above as if fully set forth herein.

45. By virtue of their wrongful conduct, the Counterclaim Defendants have been unjustly enriched and have caused Roughton to be damaged thereby.

WHEREFORE, Roughton demands judgment against Pouschine Cook, Pouschine Partners, IGI Holding, International, Pouschine, Daniel V. Balzora, Allen Cohen, Kevin Moran and Stephen Lovass for an order:

a. Awarding compensatory and punitive damages;

b. Awarding interest, attorney's fees and costs of suit; and

c. Granting such other and further relief as the Court may deem appropriate or just.

**EIGHTH COUNT**

46. The Counterclaimant repeats and realleges paragraphs 2 through 45 above as if fully set forth herein.

47. Pursuant to the terms of the Employment Agreement, upon his termination without cause Roughton is to receive, for an eighteen (18) month period commencing on the date of his termination, an aggregate amount equal to 150% of his annual base salary, payable in equal installments on Roughton's regular salary payment dates. He is also to receive an additional amount equal to the annual bonus he would have been entitled to receive for the fiscal year 2009 multiplied by the percentage of the then current fiscal year elapsed prior to his separation, which amount is to be payable in a lump-sum at substantially the same time as the annual bonuses for that fiscal year are paid to other executives of International. In addition, Roughton is to be reimbursed by International for the cost of COBRA coverage and certain other expenses incurred by him, including up to $10,000.00 for career transition services.

48. Roughton has received none of the severance benefits to which he is entitled.

49. The failure to pay those benefits is a breach of contract.

50. Moreover, the failure to pay Roughton's severance salary payments is a violation of the New Jersey Wage Payment Law.

51. Roughton has sustained damages by reason of that wrongful conduct.

WHEREFORE, Roughton demands judgment against IGI Holding and International for an order:

a. Awarding his contractually mandated severance benefits;

b. Awarding compensatory and punitive damages;

c. Awarding interest, attorney's fees and costs of suit; and

d. Granting such other and further relief as the Court may deem appropriate or just.

## NINTH COUNT

52. The Counterclaimant repeats and realleges paragraphs 2 through 51 above as if fully set forth herein.

53. The Counterclaim Defendants have acted in concert, combined, conspired or ratified the conduct of the others to inflict financial harm upon Roughton by improperly depriving him of his severance benefits, including his severance salary payments mandated by law.

54. As a result of that wrongful conduct, Roughton has sustained damages.

WHEREFORE, Roughton demands judgment against Pouschine Cook, Pouschine Partners, IGI Holding, International, Pouschine, Daniel V. Balzora, Allen Cohen, Kevin Moran and Stephen Lovass for an order:

a. Awarding his contractually mandated severance benefits;

b. Awarding compensatory and punitive damages;

c. Awarding interest, attorney's fees and costs of suit; and

d. Granting such other and further relief as the Court may deem appropriate or just.

## TENTH COUNT

55. The Counterclaimant repeats and realleges paragraphs 2 through 54 above as if fully set forth herein.

56. International and IGI Holding have breached the implied covenant of good faith and fair dealing implicit in the aforementioned Employment Agreement.

57. By virtue of that breach, Roughton has sustained damages.

WHEREFORE, Roughton demands judgment against International and IGI Holding for an order:

a. Awarding his contractually mandated severance benefits;

b. Awarding compensatory and punitive damages;

c. Awarding interest, attorney's fees and costs of suit; and

d. Granting such other and further relief as the Court may deem appropriate or just.

## ELEVENTH COUNT

58. The Counterclaimant repeats and realleges paragraphs 2 through 57 above as if fully set forth herein.

59. By virtue of their wrongful conduct, the Counterclaim Defendants have been unjustly enriched and have caused Roughton to be damaged thereby.

WHEREFORE, Roughton demands judgment against Pouschine Cook, Pouschine Partners, IGI Holding, International, Pouschine, Daniel V. Balzora, Allen Cohen, Kevin Moran and Stephen Lovass for an order:

a. Awarding his contractually mandated severance benefits;

b. Awarding compensatory and punitive damages;

c. Awarding interest, attorney's fees and costs of suit; and

d. Granting such other and further relief as the Court may deem appropriate or just.

Dated: Westfield, New Jersey
October 26, 2009

LINDABURY, McCORMICK, ESTABROOK
& COOPER, P.C.
Attorneys for Defendant/Counterclaimant

By:/s/ Peter M. Burke
Peter M. Burke

**LINDABURY, McCORMICK, ESTABROOK & COOPER, P.C.**
ATTORNEYS AT LAW
26 Broadway – Suite 2300
New York, NY 10004-1805
(212) 742-3390 (phone)
(212) 269-5016 (fax)
pburke@lindabury.com

## JURY DEMAND

The Defendant/Counterclaimant demands a trial by jury on all issues so triable.

Dated: Westfield, New Jersey
October 26, 2009

LINDABURY, McCORMICK, ESTABROOK
& COOPER, P.C.
Attorneys for Defendant/Counterclaimant

By:/s/ Peter M. Burke
Peter M. Burke

**LINDABURY, McCORMICK, ESTABROOK & COOPER, P.C.**
ATTORNEYS AT LAW
26 Broadway – Suite 2300
New York, NY 10004-1805
(212) 742-3390
(212) 269-5016 (fax)
pburke@lindabury.com